FRANZISKA M. BARNEY, Appellant, *v.* BOND AND MORTGAGE GUARANTEE COMPANY, Respondent.

Supreme Court, Appellate Term, First Department, November, 1921, Term — Filed March, 1922.

**Principal and agent — transmission of interest moneys to Germany during war — letter sent to principal requesting instructions — transmitting checks by mail pending a reply constitutes negligence — client who does not receive checks for nearly three years and after the rate of exchange has fallen is entitled to recover the interest in dollars on surrendering the checks.**

Until 1914, plaintiff, an American citizen and the owner of bonds and mortgages guaranteed by defendant, received in Germany by means of drafts sent to her by defendant the interest on the mortgages. Thereafter, presumably on account of the war, remittances for interest were made by money orders as well as by

drafts, and payments on account of interest immediately preceding October 1, 1916, and November 1, 1916, were made by money order.  By letter under date of June 1, 1916, plaintiff was informed that defendant could not send a draft for the interest due on that date because of inability to obtain foreign exchange on Germany and requested to be informed as to what it should do with the interest check.    This letter, delayed in the mails on account of war conditions, was received by plaintiff January 5, 1917, and was at once replied to:  " Deposit or invest the amount for me until foreign exchange could be obtained again." In the meantime, without waiting for a reply to its inquiry in said letter, defend- ant sent plaintiff two money orders for 425.25 marks each, which were received and cashed by plaintiff.    In 1919, about six months after peace was declared, plaintiff received in an envelope stamped " opened and held back by the British Authorities " an envelope containing no other information than two checks to plaintiff's order both drawn on banks in Germany.    One of the checks for 812.50 marks was dated October 3, 1916, and the other for 664.11 marks was dated October 30, 1916.    Both checks were immediately deposited for collection by plaintiff but were returned by her bank with notification that payment had been refused.    Plaintiff returned to this country and demanded of defendant her interest money, at the same time tendering to it the said two checks with the request to refund them in dollars, which request was refused.

In an action to recover the interest due October 1, 1916, and November 1, 1916, which had been duly received and collected by defendant, it was conceded that the amount of the two checks represented the interest sued for at the then rate of exchange, and that when they were received by plaintiff the value of the mark had greatly depreciated.    *Held,* that the liability of defendant, if any, rested upon the rules of agency and not upon its bond and mortgage guaranty.

When defendant sent its letter of June 1, 1916, it should have retained the funds in its possession until at least a reply to its inquiry had been received from plaintiff.

The defendant in transmitting by mail to plaintiff the checks in suit was guilty of palpable negligence, and a judgment dismissing the complaint upon the merits will be reversed and judgment directed for the full amount demanded by the complaint.

LEHMAN, J., dissenting.

APPEAL by plaintiff from a judgment of the Municipal Court of the city of New York, borough of Manhattan, fifth district, dismissing the complaint on the merits after a trial before the court without a jury.

*Paul Schnitzler,* for appellant.

*Harold Swain (Benjamin G. Bain,* of counsel), for respondent.

DELEHANTY, J.  The facts herein are practically undisputed and are as follows: plaintiff is the owner of two bonds and mortgages guaranteed by defendant, both as to principal and interest, and sues to recover the interest due thereon on October 1 and November 1, 1916, amounting to $146.25 and $118.13, respectively, which was duly received and collected by defendant.  Plaintiff, an American citizen, was spending the summer and fall of 1916 in Germany and had been receiving interest on mortgages from defendant by means of drafts sent her by defendant since 1908 and until 1914.  After the latter year, presumably on account of the war, these remittances were made by money orders as well as by drafts; and payments

on account of interest, immediately preceding that in suit, were made her by money order. On June 1, 1916, defendant wrote plaintiff as follows: " There is an interest check due June 1st, on a mortgage held by you. ' We are unable to send you a draft for same, owing to the fact that we are unable to obtain foreign exchange on Germany. Will you kindly inform us what disposition you desire us to make of this check? " This letter, delayed in the mails on account of war conditions, was received by plaintiff January 5, 1917, and was at once replied to: " deposit or invest the amount for me until foreign exchange could be obtained again." In the meantime, without awaiting a reply to its inquiry of June 1, 1916, defendant sent plaintiff two money orders, for 425.25 marks each, which were received and cashed by plaintiff. In 1919, about six months after peace was declared, plaintiff received, in an envelope which had stamped on it " opened and held back by the British Authorities," an envelope containing no other information than two checks, to her order, one dated October 30, 1916, on Deutsche Bank, Berlin, for 664.11 marks, made by Title Guarantee and Trust Company, and the other dated October 3, 1916, for 812.50 marks, on Dresdner Bank, Munchen, made by Lehrenkrauss & Sons, which checks were immediately deposited for collection by plaintiff but were returned to her by. her bank, with the notification that payment had been refused. Thereafter plaintiff, as soon as she was able to prove her American citizenship and obtain her passport, returned to this country and demanded her interest money of defendant, at the same time tendering to it the two checks with the request to refund them in dollars, which was refused. It is conceded that the amount of these checks represented the amount of the interest in question at the then rate of exchange; that when they were received by plaintiff in 1919 the value of the mark had very much depreciated. Upon the foregoing facts it seems to me that the liability of defendant herein, if any such has been established, rests not upon its bond and mortgage guaranty, but upon the rules of agency, as will hereinafter be shown. The agreement of guaranty between the parties hereto provides: " By the acceptance of this guarantee this company is made irrevocably the agent of the insured, with the exclusive right, but at its own expense, to sue for and receive the proceeds of any policy of title insurance or fire insurance covering the mortgaged premises, and to collect the interest as it falls due on the bond and mortgage hereby guaranteed." It is quite apparent that this guaranty would become existent only on default of the mortgagor in the payment of principal or interest, and in default thereof the relationship between the parties was that of principal and agent. The

rule of law applicable to defendant, therefore, is, as was said in *Loeb* v. *Hellman*, 83 N. Y. 601, as follows: " The agent is understood to engage for reasonable skill and ordinary diligence, and is liable only for injuries to his principal growing from a want of that skill and from ordinary negligence." The question then for determination is whether defendant used reasonable care and skill in transmitting to plaintiff the money in question. It is undisputed that from 1909 to 1914 plaintiff received interest on mortgages from defendant by means of drafts but that after the beginning of the World War these remittances were made by money orders as well as drafts; that the payments immediately preceding the checks in suit were made by money order. If this practice had continued and included the transaction in question I would have no hesitation in saying that due to the long and uniform custom prevailing between the parties in the transmission of these funds there was a ratification by plaintiff of the acts of defendant in connection therewith. But when defendant sent to plaintiff its letter of June 1, 1916, above referred to, that it was unable to send her a draft for the interest then in hand, owing to inability to obtain foreign exchange on Germany and inquiring what disposition she desired to make thereof, then in the exercise of ordinary care and caution it should have retained the funds in its possession until at least a reply to that inquiry was received from plaintiff. It must be presumed that defendant had knowledge that, owing to the delayed condition of the mails to and from Germany and in many instances of confiscation thereof by the British authorities, a reply to its inquiry would take some considerable time before its receipt. Yet, notwithstanding that, we find defendant in the month of October following transmitting by mail to plaintiff the checks in suit which never reached her until 1919, some time after the declaration of peace was effected. Even then, with a depreciated currency existing in Germany, these checks on presentation to the banks on which they were drawn failed to be honored. It is difficult to escape the conclusion that in doing what it did the defendant was guilty of palpable negligence in the premises. Defendant's witness Steiger, who was the foreign exchange clerk in the banking house of Lehrenkrauss & Sons, who issued one of the checks in suit, testified that he knew at the time in question that it was not safe to send valuables or negotiable papers in letters; that the English would seize them and that that was especially the case after June 1, 1916; that he knew that if he would send these checks it was very likely that they would not arrive in Germany; that it would have been better and safer to send a money order or a delegation to the bank over there to make the payment to plaintiff; that defendant asked

for a check without any further inquiry and that his firm was glad to get rid of their balance over there at the high rate of exchange. All this knowledge was available to defendant upon proper inquiry, which accentuates the contention that the proper course for defendant to have pursued, was to have deposited the funds to the credit of plaintiff, awaiting further instructions from her in connection therewith. If, however, defendant then desired to remit the funds instead of purchasing for her checks as was actually done, it should have had its bank instruct its correspondent in Germany to pay the amount to plaintiff or finally to have sent her a money order, in either of which events the dollars paid therefor could have been recovered in the case of diversion thereof from the proper channels. To hold in the circumstances, as the trial court has done, that plaintiff is relegated to her rights on the checks as her sole remedy, the value of which is almost nil, is unthinkable. We conclude, therefore, that the judgment should be reversed and judgment absolute granted for the amount demanded in the complaint, together with appropriate costs.

Judgment reversed, with $30 costs to the appellant, and judgment ordered in favor of plaintiff for $264.38, with interest from the 1st day of November, 1916, and costs in the court below.

WHITAKER, J., concurs.

LEHMAN, J. (dissenting). The evidence shows beyond possibility of dispute that defendant was authorized to remit to Germany moneys due to the plaintiff, for prior to June 1, 1916, this had been the usual course of business between the parties. The letter of June 1, 1916, sent by the defendant to the plaintiff in no wise changed this authority for the letter from the defendant merely asked advice as to what should be done with the money when the defendant was " unable to obtain foreign exchange on Germany," and the letter from the plaintiff to the defendant authorized the defendant to hold the moneys due to the plaintiff only " until foreign exchange could be obtained again." As a matter of fact they constitute in my opinion a clear recognition of the authority of the defendant to purchase foreign exchange in behalf of the plaintiff for the purpose of remitting moneys due to her and when the defendant purchased a draft upon a bank in Germany it was acting as the plaintiff's agent and subject to a liability only in case it failed to show due care when it purchased the draft which it mailed to the plaintiff. In the absence of negligence on its part any loss through non-payment or non-delivery of this draft must, upon well-established principles of agency, fall upon the principal.

It is urged that the defendant was negligent in purchasing drafts

instead of money orders.   In considering the question of defendant's possible negligence we must bear in mind that no evidence has been presented that it was practical to purchase a money order from the post office department of the United States and the court may well take judicial notice of the fact that as a business matter it was not practical to purchase such a money order when the exchange value of a mark was only seventeen cents.   The record shows that at the time when the defendant purchased and mailed the drafts to the plaintiff the only other practical method of remitting moneys which as agent for the plaintiff it was authorized to use, would have been the purchase of a banking money order or " delegation."   The difference between the two methods seems to be that the draft is a negotiable instrument and when seized in the mail by one of Germany's enemies, the drawee could not present the draft or obtain payment in any other way, whereas a money order or delegation is merely a direction to the bank to pay a certain sum to a designated person, and if such order or direction is removed from the mail the bank could still make the payment to the designated person without fear.   In view of the fact that the defendant undoubtedly gave notice that both drafts and orders directed to German banks were frequently withdrawn from the mail by belligerents, it would have been in a sense safer to purchase a money order rather than a draft, for upon discovery of the abstraction of a money order from the mail a similar order could have been sent to the German bank and payment thereby secured.   It is not contended that there is any reasonable probability that a money order would have been safer in the mail than a draft, but merely that if the money order were taken from the mail its loss could more easily be remedied.   If the defendant had sent a money order to the plaintiff on October 1, 1916, there is no reasonable probability that its loss would have been discovered and notice of such loss brought home to the defendant in time for the defendant to obtain a duplicate order and remit it to the plaintiff or the German bank so that it could have been paid before the United States entered the war and transactions between this country and Germany came to an end.   The defendant was authorized to purchase foreign exchange and it purchased such foreign exchange in accordance with its authority.   Even if we assume that in the exercise of due care the foreign exchange which it should have purchased would have been a non-negotiable money order rather than a draft, the plaintiff is not shown to have been injured by the failure to obtain an order in the absence of evidence that there was reasonable probability that a letter containing a money order would have been less subject to seizure in the mail, or that if seized

the plaintiff could still have secured payment of the moneys before the United States became a belligerent. The loss occasioned to the plaintiff was, therefore, not due to any negligence on the part of the defendant but to the plaintiff's own authorization to the defendant to purchase foreign exchange for her at a time when there was risk of any foreign exchange on Germany being seized in the mail.

It follows that the judgment should be affirmed, with costs.

Judgment reversed.